UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. A 2017 GMC ACADIA WITH VIN 1GKKNXLS2HZ256796;
2. $1,018.92 FROM ROYAL CREDIT UNION ACCOUNT 4569474440;
3. $21,983.16 FROM BANK OF AMERICA ACCOUNT 374004337463;
4. $11,144.50 FROM NORTHONE/RADIUS BANK ACCOUNT 5110103119;
5. $13,297.00 FROM NORTHONE/RADIUS BANK ACCOUNT 7160013442;
6. $34,200.00 FROM ROYAL CREDIT UNION ACCOUNT 4561219975;
7. $119,164.27 FROM CITIBANK ACCOUNT 162119187;
8. $4,031.02 FROM SPIRE CREDIT UNION CHECKING ACCOUNT 10100000776062;
9. $5,016.23 FROM SPIRE CREDIT UNION SAVINGS ACCOUNT 10000000776062;
10. $8,321.74 FROM KEY BANK ACCOUNT 776920002263; and
11. $5,039.36 FROM KEYBANK ACCOUNT 354153030680,

Defendants.

Case No. 21-cv-

**COMPLAINT FOR FORFEITURE *IN REM***

## INTRODUCTION

The plaintiff, the United States of America, through its attorneys W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Quinn Hochhalter, Assistant United States Attorney, in a civil cause of action for forfeiture, alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## NATURE OF THE ACTION

1. This is an action to forfeit and condemn the Defendants *in rem* to the use and benefit of the United States of America pursuant to 18 U.S.C. § 981(a)(1)(C) for violations of 18 U.S.C. § 1343 (Wire Fraud).

1

## THE DEFENDANTS *IN REM*

2. The Defendants *in rem* are the following property:

- A 2017 GMC Acadia with VIN 1GKKNXLS2HZ256796;

- $1,018.92 from Royal Credit Union account number 4569474440;

- $21,983.16 from Bank of America account number 374004337463;

- $11,144.50 from NorthOne/Radius Bank account number 5110103119;

- $13,297.00 from NorthOne/Radius Bank account number 7160013442;

- $34,200.00 from Royal Credit Union account number 4561219975;

- $119,164.27 from Citibank account number 162119187;

- $4,031.02 from Spire Credit Union checking account number 10100000776062;

- $5,016.23 from Spire Credit Union savings account number 10000000776062;

- $8,321.74 from Key Bank account number 776920002263; and

- $5,039.36 from Key Bank account number 354153030680

(collectively, the "Defendants *in rem*").

3. The Defendants *in rem* were seized on January 13, 2021, except for the 2017 GMC Acadia, which was seized on June 30, 2021. The Defendants *in rem* are in the custody of the United States Marshals Service.

///

///

///

## JURISDICTION AND VENUE

4. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the Defendants *in rem*. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5. This Court has *in rem* jurisdiction over the Defendants *in rem* under 28 U.S.C. § 1355(b). Upon the filing of this Complaint, the Plaintiff requests that the Clerk of Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b)(i), which the Plaintiff will execute upon the Defendants *in rem* pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

6. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1355(b)(1) because acts or omissions giving rise to the forfeiture occurred in this District, and pursuant to 28 U.S.C. § 1395 because the Defendants *in rem* are located in this District.

## FACTS

A. <u>Overview of the CARES Act and Paycheck Protection Program</u>

7. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act is a federal law enacted in March 2020, designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the COVID-19 pandemic.

8. One source of relief provided by the CARES Act is the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3

9. To obtain a PPP loan, a qualifying business is required to submit a PPP loan application, signed by an authorized representative of the business.

10. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible for the PPP loan.

11. In the PPP loan application (SBA Form 2483), the small business (through its authorized representative) is required to state, among other things, its (a) average monthly payroll expenses; and (b) number of employees. These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.

12. In addition, businesses applying for a PPP loan are required to provide documentation of their payroll expenses.

13. The PPP loan application requires the business (through its authorized representative) to certify that the applicant was in operation on February 15, 2020, and had employees for whom it paid salaries.

14. When a PPP loan application is approved, the participating lender funds the PPP loan using its own money, which is guaranteed by the SBA. Data from the application, including the information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

15. PPP loan proceeds are required to be used on certain permissible expenses, including payroll costs, mortgage interest, rent, and utilities.

4

16. Under the applicable PPP rules and guidance, the interest and principal on the PPP loan is eligible for forgiveness if the business spent the loan proceeds on these expense items within a designated period of time and used a certain portion of the loan towards payroll expenses.

17. Each borrower is limited to one loan and a maximum loan amount calculated based on a business's average monthly payroll expenses.

18. The PPP application requires the applicant to certify and initial the following representation: "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant has not and will not receive another loan under the Paycheck Protection Program."

B.  **Funded Fraudulent PPP Applications**

19. Harold Kaeding is married to Zoraida Franco, and together they have a son, Benjamin Kaeding.

20. Beginning on or about April 2020, Harold Kaeding, Zoraida Franco, and Ben Kaeding collectively applied for at least seven Paycheck Protection Program (PPP) loans.

21. The PPP loan applications they submitted were based on material falsehoods and omissions. Through those applications, they were seeking to receive funds through fraudulent pretenses (the "Subject PPP Fraud Offenses").

22. The Subject PPP Fraud Offenses relied on the use of interstate wires, in violation of Title 18, U.S.C., Section 1343.

23. Records indicate lenders and banks disbursed at least $504,090.00 as a result of the 3 loan applications described below in paragraphs 25 through 53.

5

24. From on or about April 28, 2020, to on or about November 12, 2020, Harold Kaeding, Zoraida Franco, and/or Benjamin Kaeding, withdrew approximately $80,700 in cash from the proceeds of the Subject PPP Fraud Offenses.

      i. *PPP Loan Application 1: Fraudulent Receipt of $47,000 in PPP Funds for Harbor Holdings Corporation*

25. On or about April 3, 2020, Benjamin Kaeding applied for a PPP loan on behalf of Harbor Holdings Corporation, seeking approximately $47,000 in PPP funds (PPP Loan Application 1).

26. PPP Application 1 listed Ben Kaeding as the sole owner.

27. PPP Application 1 indicated the loan was for payroll, lease/mortgage interest, and utilities.

28. PPP Application 1 indicated Harbor Holdings had 4 employees with an average monthly payroll of $18,834.

29. PPP Application 1 included a document purporting to be an Employer's Quarterly Federal Tax Return (IRS Form 941) for the first quarter of tax year 2020.

30. According to the IRS, there is no record that Harbor Holdings Corporation filed an IRS Form 941 for the first quarter of tax year 2020.

31. Harbor Holdings Corporation did not report to the Minnesota Department of Economic Employment (MN DEED) employing or paying wages to any employee from approximately 2019 through 2020.

32. On or about April 22, 2020, Royal Credit Union approved PPP Application 1 in the amount of $47,000.

33. Ben Kaeding signed the promissory note and directed the loan proceeds to be deposited into Harbor Holdings Corporation's Royal Credit Union bank account 4569474440.

      ii. *PPP Loan Application 2: Fraudulent Receipt of $215,000 in PPP Funds for Harbor Corp.*

34. On or about May 13, 2020, Zoraida Franco applied for PPP Loan Application 2, seeking approximately $215,000 in PPP funds on behalf of Harbor Corp. for payroll, lease/mortgage interest, and utilities.

35. PPP Loan Application 2 included a document purporting to be an Employer's Quarterly Federal Tax Return (IRS Form 941) for the first quarter of tax year 2020, indicating Harbor Corp. had paid four employees during the first quarter of tax year 2020.

36. The IRS has no record of Harbor Corp. filing an IRS Form 941 for the first quarter of 2020.

37. PPP Application 2 also included a purported Employer's Annual Federal Unemployment Tax Return (IRS Form 940) for tax year 2019, claiming Harbor Corp. paid taxable wages resulting in a tax liability of $6,204.38 for 2019.

38. The IRS has no record of Harbor Corp. filing an IRS Form 940 for tax year 2019.

39. PPP Application 2 also included two purported IRS Forms 1120 for tax year 2019.

40. The IRS has no record of Harbor Corp. filing any version of IRS Form 1120 for tax year 2019.

41. In submitting PPP Loan Application 2, Zoraida Franco certified that Harbor Corp. was in operation on February 15, 2020.

42. Minnesota Secretary of State records document Harbor Corp. was not incorporated until April 24, 2020.

43. MN DEED records show Harbor Corp. has not reported employing or paying wages to any employee from approximately 2019 through 2020.

44. On or about May 18, 2020, Sunrise Banks approved PPP Application 2.

45. Zoraida Franco e-signed the promissory note and directed the $215,000 in loan proceeds be deposited into Harbor Holdings Corporation's Bank of America account ********2186.[1]

        iii. *PPP Loan Application 3: Fraudulent Receipt of $242,090 in PPP Funds for AutoPay, Inc.*

46. On or about May 21, 2020, an individual identified as Zoraida Franco applied for a PPP loan on behalf of AutoPay Inc., seeking approximately $242,090 in PPP funds for payroll, lease/mortgage interest, and utilities ("PPP Application 3").

47. PPP Loan Application 3 indicated AutoPay, Inc. had 14 employees with an average monthly payroll of $96,836. However, the IRS has no record that AutoPay, Inc. filed an IRS Form 941 for the first quarter of 2020 or an IRS Form 940 for the tax year 2019.

---

[1] This account was not seized because only minimal funds remained. Because this account is not a Defendant *in rem*, the account number is redacted.

48. MN DEED records show AutoPay Inc. did not report employing or paying wages to any employee from approximately 2019 through 2020.

49. In support of PPP Loan Application 3, Zoraida Franco submitted AutoPay, Inc. bank statements for February 2020, March 2020, and April 2020 from the NorthOne/Radius Bank account number 5110103119; however, the format of all three purported bank statements do not match official bank records produced by NorthOne/Radius Bank.

50. In submitting PPP Loan Application 3, Zoraida Franco certified that AutoPay, Inc. was in operation on February 15, 2020.

51. Minnesota Secretary of State records document that AutoPay, Inc. was not re-incorporated until April 25, 2020.

52. On or about May 21, 2020, BlueVine Capital approved PPP Application 3.

53. Zoraida Franco e-signed the promissory note and directed that the $242,090 in loan proceeds be deposited into AutoPay, Inc.'s NorthOne/Radius Bank account number 5110103119.

C. <u>Denied and Recalled Fraudulent PPP Applications</u>

54. PPP Loans require applicants to certify the applicant "has not and will not receive another loan under the Payroll Protection Program" for the period of February 15, 2020, through December 31, 2020.

55. In addition to PPP Applications 1 through 3, all of which were funded, Benjamin Kaeding and Zoraida Franco each applied for at least two other PPP loans (PPP Loan Applications 4, 5, 6, and 7).

56. Each of those PPP loan applications contained false claims, fabricated supporting documents, or both. For example, Benjamin Kaeding and Zoraida Franco certified they "ha[d] not and will not receive another loan under the Payroll Protection Program" for the period of February 15, 2020, through December 31, 2020, despite their other loans.

57. PPP Loan Applications 4, 5, 6, and 7 were either denied or funded and later recalled due to the bank's suspicions of fraudulent activity.

D. Disposition of the Fraud Proceeds

58. The proceeds of the Subject PPP Fraud Offenses were initially dispersed into three different bank accounts: The funds from PPP Loan Application 1 were disbursed into Harbor Holdings Corporation's Royal Credit Union bank account 4569474440; the funds from PPP Loan Application 2 were disbursed into Harbor Holdings Corporation Bank of America account ********2186; and the funds from PPP Loan Application 3 were disbursed into AutoPay, Inc.'s NorthOne/Radius Bank account number 5110103119.

59. The proceeds of the Subject PPP Fraud Offenses were subsequently distributed to various other bank accounts, all of which were controlled by Harold Kaeding, Zoraida Franco, and/or Ben Kaeding.

60. Tracing analysis confirmed that the Defendants *in rem* are traceable to the proceeds of the Subject PPP Fraud Offenses described above.

61. The tracing analysis showed that each of the Defendants *in rem* were primarily funded with, or purchased with, the proceeds of the Subject PPP Fraud Offenses.

10

62. In each case, the bank accounts included in the Defendants *in rem* had been predominately funded by proceeds of the Subject PPP Fraud Offenses.

63. Additionally, the payments for the purchase of the 2017 GMC Acadia were made from these bank accounts, which had been funded predominately with the proceeds of the Subject PPP Fraud Offenses.

64. Accordingly, each of the Defendants *in rem* constitutes or is traceable to the proceeds of the Subject PPP Fraud Offenses.

**BASIS FOR FORFEITURE**

**COUNT 1**
**ALL DEFENDANTS**
**18 U.S.C. § 981(a)(1)(C)—FOR VIOLATIONS OF 18 U.S.C. § 1343**

65. The actions described above constitute wire fraud in violation of 18 U.S.C. § 1343.

66. Civil forfeiture of the proceeds of wire fraud is authorized by 18 U.S.C. § 981(a)(1)(C). More specifically, section 981(a)(1)(C) authorizes forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or any conspiracy to commit such offense." Section 1956(c)(7)(A) defines the term "specified unlawful activity" as including "any act of activity constituting an offense listed in section 1961(1) of this title." And 18 U.S.C. 1961(1) includes violations of 18 U.S.C. §§ 1343 (wire fraud) in its definition of racketeering activity.

67. Pursuant to 18 U.S.C. § 984, the United States may civilly forfeit funds deposited into an account at a financial institution up to the amount of forfeitable funds

that had been kept in that account, so long as an action to forfeit such fungible funds is commenced within one year of the relevant offense.

68. The Defendants *in rem* constitute or are derived from the proceeds of the Subject PPP Fraud Offenses, a wire fraud scheme, and are therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C). To the extent necessary, the provisions of 18 U.S.C. § 984 will be relied upon in support of this Count.

## CLAIM FOR RELIEF

69. The plaintiff requests that notice of this action be given to all persons who reasonably appear to be potential claimants of interest in the Defendants *in rem*; that the Defendants *in rem* be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and disbursements in this action and for such other and further relief as this Court deems proper and just.

Dated: July 13, 2021

W. ANDERS FOLK
Acting United States Attorney

*s/ Quinn Hochhalter*

BY: QUINN HOCHHALTER
Assistant U.S. Attorney
Attorney ID No. 07791ND
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55412
612-664-5600
quinn.hochhalter@usdoj.gov

## VERIFICATION

I, Charles Burnham, verify and declare under penalty of perjury as follows:

I am and have been a Special Agent for the Federal Bureau of Investigations ("FBI") since 2009. I have read the foregoing Verified Complaint *In Rem* and know the contents thereof, and the matters contained in the Verified Complaint are true to my own knowledge, except that those matters not within my knowledge are alleged on information and belief, and I believe those matters to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information provided to me by other law enforcement agencies and officers, and information I have learned by reviewing reports prepared by other law enforcement agencies and officers, as well as my investigation of this case, together with others, as a FBI Special Agent.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated: 7/13/21

s/ Charles Burnham
Charles Burnham
Special Agent
Federal Bureau of Investigation